IN THE UNITED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**FILED**

MAR 1 2 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| SANDRA HOLT, DEBRA GAWOR, POLLY SMITH, JOANN MORRIS, MARTY COOPER, ADELIA HARTZOG, and PAUL D. PITTMAN, on behalf of themselves and all others similarly situated, )))))))) | |
| Plaintiffs, )) | |
| vs. ))))) | CIVIL ACTION NUMBER: CV-03-A-748-N JURY DEMAND |
| RITE AID CORPORATION, )) | |
| Defendants. ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO FACILITATE 29 U.S.C. §216(b) NOTICE

### I. INTRODUCTION

Sandra Holt, Debra Gawor, Polly Smith, and Joann Morris ("Plaintiffs") filed this case against Rite Aid Corporation (hereinafter "Rite Aid") as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b). Since the filing of the initial lawsuit, Marty Cooper, Adelia Hartzog, and Paul Pittman filed Consent to Join forms and Motions to Amend the Complaint seeking to become party plaintiffs. This Court granted said Motions to Amend and Plaintiffs Cooper, Hartzog and Pittman are now named plaintiffs in this litigation. The plaintiffs seek to recover unpaid overtime compensation, prejudgement interest on award of back-pay, liquidated

36

damages and attorneys' fees and costs. The plaintiffs seek to represent all "similarly situated" Assistant Store Managers and/or Store Managers (current and former) of Rite Aid who were employed by Rite Aid and who were subject to Rite Aid's uniform policy of not paying them overtime compensation during the three (3) years prior to filing of the Complaint.

To participate in this case, all individuals must "opt-in" by filing a written consent to participate in this lawsuit. FLSA, 29 U.S.C. §216(b). In order to decide whether to opt into this case, similarly situated individuals need to be apprized of the pendency of this case in an timely manner; otherwise, the claims of many such employees will be barred by the FLSA statute of limitations.[1]

For the reasons stated herein, the plaintiffs request that this Court authorize this case to proceed as a nation-wide collective action,[2] order the requested identification of the potential opt-ins, and authorize the issuance of the plaintiffs' proposed notice (Exhibit #1) to be mailed to all Assistant Store Managers and/or Store Managers of Rite Aid, who have been classified as exempt in the three years prior to the filing of the complaint, informing them of their rights to participate as opt-in plaintiffs in this action.

---

[1]Under the FLSA, the statute of limitations applicable in a given action may be two years or, as the plaintiffs allege herein, three years due to defendant's wilful violations of the FLSA. *Knights of Columbus, GA,* 19 F.3d 579, 582 (11th Cir.); *cert. denied,* 513 U.S. 929 (1994); FLSA, 29 U.S.C. §255(a).

[2]Plaintiffs seek nation-wide notice, with the exception of the Stores and employees in the State of California. In 1999, Assistant Store Managers, Store Managers, and Manager Trainees brought suit for wage and hour violations under California state law. *Albrecht, et. al. v. Rite Aid Corporation,* Case No. 729219, San Diego County Superior Court. That case was resolved in 2001, with among other things, all Assistant Managers in the State of California being reclassified as hourly, non-exempt employees and compensated for overtime hours in which they now work. (Exhibit #4 - LeClair Depo. pp. 10-13; Exhibit #5).

## II. STATEMENT OF THE FACTS

### A. PROCEDURAL HISTORY

The plaintiffs (Holt, Gawor, Smith, and Morris) filed their initial collective action Complaint in this matter on July 16, 2003  On September 15, 2003, defendant filed its Answer and Defenses to plaintiffs' Complaint.  Since the filing of the initial lawsuit, Marty Cooper filed a Consent to Join Form and Motion to Amend the Complaint on September 18, 2003 seeking to be added as a party plaintiff.  On December 23, 2003 and December 30, 2003 Adelia Hartzog, and Paul Pittman also filed Consent to Join forms and Motions to Amend the Complaint seeking to become party plaintiffs. (Exhibit #2).  On December 22, 2003, December 29, 2003, and January 5, 2004, this Court granted all three amendments thus, allowing Cooper, Hartzog, and Pittman to become named plaintiffs in this litigation.  The defendant filed its Amended Answer on January 19, 2004.  Marie Walker has also signed a Consent to Join form and pursuant to the previous instructions from the Court and the clerk's office is also filing a Motion to Amend the Complaint to add her as a party plaintiff.  (Exhibit #3).

### B. PLAINTIFFS' ALLEGATIONS

The plaintiffs allege that Rite Aid requires its exempt Assistant Store Managers and all Store Managers to work numerous hours of overtime per week without any additional compensation being paid to said employees.  The defendant has intentionally failed and/or refused to pay these employees for all hours worked and has failed to pay overtime rates in accordance with the provisions of the FLSA.

Rite Aid Corporation is one of the nation's leading drugstore chains.  (Exhibit #6).  Rite Aid maintains approximately 3,400 stores in 28 states and the District of Columbia.  (Exhibit #6; Exhibit

#7- Bailey Depo. p. 17; Exhibit #8)[3]  Rite Aid's headquarters is located in Camp Hill, Pa and all of its drugstores currently in operation are branded under the Rite Aid name.  (Exhibit #7 - Bailey Depo. pp. 18-19).

Rite Aid drugstores are divided into three Divisions - Division #1 - Western, Division #2 - Central, and Division #3 - Eastern.  (Exhibit #7 - Bailey Depo., p. 16; Exhibit #9).  Each Division is divided into Regions and Districts within each Region.  (*Id.*)[4] The organizational and management structure for each Division is similar.  Mark Panzer, Senior Executive Vice President of Store Operations, oversees store operations for stores in all three Divisions.  (Exhibit #9; Exhibit #10 - Panzer Depo. pp.11).  There is a Vice President under Panzer and over each Division.  (Exhibit #9; Exhibit #11).  A Regional Vice President reports to the Divisional Vice President and is responsible for each Region; while each District is overseen by a District Manager.  (Exhibit #11).

Each store employs Cashiers/Clerks (who are non-exempt, hourly employees) and Key Supervisors (who are also non-exempt, hourly employees).[5]  (Exhibit #7 - Bailey Depo., pp. 35-37; Exhibit #11; Exhibit #12).   Key Supervisors are part of the management team and perform all of the job duties performed by Assistant Managers and all job duties performed by Store Managers, except interviewing and recommending for hire entry level Cashiers/Clerks.   (Exhibit #11; Exhibit #13).  Key Supervisors are paid hourly and receive overtime compensation for hours they work in

---

[3]Bailey is Rite Aid's Senior Vice President of Compensation and oversees compensation for all Rite Aid drugstores.  (Ex. #7 - Bailey Depo. p.18).

[4]Exhibit #9 sets forth the location and number of Regions and Districts.

[5]Each store also employs Pharmacy Techs/Clerks, who are hourly, and Pharmacists, who are salaried.  (Exhibit #11).  The Pharmacist oversee the Pharmacy and its employees.

excess of 40 hours. (Exhibit #7 - Bailey Depo., p. 78-79). Key Supervisors' FLSA classification does not change based on the duties they perform and the responsibility they are given. In other words, these individuals remain non-exempt even when they are performing managerial duties.[6] (Exhibit #7 - Bailey Depo., pp. 81-83).

Prior to May, 2001, all Assistant Managers were classified by defendant as salary exempt. (Exhibit #5). However in 2001, Rite Aid re-classified all Assistant Managers in its California stores to hourly, non-exempt. (Exhibit #5; Exhibit #4 - LeClair Depo. pp. 10-13)[7]. After this change in classification, the California Assistant Managers are all hourly employees regardless of the store size, amount of sales, and duties and responsibilities they perform. (Exhibit #5; Exhibit #7 - Bailey Depo., p. 52). Since 2001, Rite Aid has classified its Assistant Managers as both exempt and non-exempt and maintain Job Descriptions for each. (Exhibit #7 - Bailey Depo. pp. 53-55; Exhibit #14; Exhibit #15). Assistant Managers perform the same duties and responsibilities regardless if they are classified as exempt or non-exempt. (Bailey Depo., p. 55). In fact, other than one being exempt and the other non-exempt, there is no difference in the duties, responsibilities and qualifications of Assistant Managers. (Exhibit #7 - Bailey Depo., p. 55). Exempt and non-exempt Assistant Managers are currently employed in all divisions and the job descriptions submitted as Exhibit #14 and #15 are the job descriptions for Assistant Managers in stores within all three Divisions. (Exhibit #7 - Bailey Depo. pp. 53-55). Exempt Assistant Managers are not compensated with overtime pay

---

[6]The hourly Key Supervisor performs the duties of a Manager and Assistant Manager in their absence. (Exhibit #13). Not all stores have Assistant Managers and in those that do not, the Key Supervisors perform the job duties of Assistant Manager. (*Id.*).

[7]Wayne LeClair is Rite Aid's Corporate Vice President of Human Resources Administration. (Exhibit #4 - LeClair Depo. p. 81).

for hours they work in excess of 40; however, non-exempt Assistant Managers are paid overtime for performing the same duties. (Exhibit #7 - Bailey Depo., p. 99).

All Store Managers, in all divisions throughout the country, are classified by defendant as exempt employees. (Exhibit #7 - Bailey Depo. pp.40-41).  Exhibit #16 is the job description for the position of Store Manager and is the job description for all Store Managers in all stores in all divisions throughout the country.  (Exhibit #16; Exhibit #4 - LeClair Depo. pp. 22, 100).  Store Managers are not compensated for overtime for hours they work in excess of 40 hours per week. Exhibit #7 - Bailey Depo., pp. 40-42)

The job duties and responsibilities for defendant's Assistant Managers are similar regardless of the store, district, region and division.  (Exhibit #14; Exhibit #10 - Panzer Depo. p. 54; Exhibit #4 - LeClair Depo. p. 22).  The job duties and responsibilities for defendant's Store Managers are also similar regardless of the store, district, region and division.  (Exhibit #16; Exhibit #4 - LeClair Depo. p. 22).  Defendant has attempted to determine the amount of time it takes to perform certain tasks for scheduling purposes related to its Staffworks Scheduling Program by observing a select number of employees perform their jobs.  (Exhibit #17 - Markley Depo., pp. 14-15, 60-62).[8]  The results of the observation of these few individuals have been applied to all employees in all stores in all three divisions.  (*Id.*)  The tasks standards (i.e. time spent to perform each task) are used for all stores in all divisions, including Division 2 - Central, even though data was only compiled from a small number of stores in Divisions 1 and 3.  (*Id.*).  In fact, one task study by defendant only

---

[8]David Markley is Rite Aid's Director of Labor Control with responsibility for monitoring payroll.  He also was responsibility for implementing Staffworks nationwide.  (Exhibit #17 - Markley Depo. pp. 23, 26).

observed employees in 20 of defendant's 3,400 stores, but defendant applied its findings to all stores nationwide. (Exhibit #17 - Markley Depo., p. 72).

Rite Aid maintains common policies and procedures for all stores in all of the divisions, including the Management Development Program, Rite Aid Policies and Procedure Manual, Rite Aid Store Operations Manual, Rite Aid Manager's Guide, and Hiring and Promotion Policy. (Exhibit #10 - Panzer Depo., pp. 27, 61, 62-63; Exhibit #18; Exhibit #4 - LeClair Depo. p.100). Rite Aid also utilizes the same training program for all stores within all three divisions. (Exhibit #10 - Panzer Depo., p. 61; Exhibit #19). Defendant also utilizes the same Scheduling Program (Staffworks) in all of its stores throughout all three divisions and, since July 2001, utilizes the same payroll recording system (Kronos) in all its stores nationwide. (Exhibit #20 - Silsby Depo., pp. 23-24, 26).[9] Defendant's Store Manager Pay Program is also the same for all stores in all of Rite Aid's divisions throughout the country. (Exhibit #7 - Bailey Depo., pp. 28-29, 100). Raises for employees are all standard throughout the country, as are raises associated with promotions to Key Supervisor, Assistant Manager, and Store Manager. (Exhibit #7 - Bailey Depo., pp. 84-85, 89-91, 100-101). In addition, defendant maintains the same management work week policy for all its stores nationwide. (Exhibit #21).

Rite Aid Store Managers and Assistant Store Managers are required to work over 40 hours per week.[10] Store Managers and exempt Assistant Managers are instructed to clock in upon their

---

[9]Robert Silsby is Rite Aid's Group Vice President over Store Operation Services. (Exhibit #20 - Silsby Depo. pp. 3-4).

[10]Exhibit #22; Exhibit #7 - Bailey Depo. pp. 103-104; Exhibit #20 - Silsby Depo. pp. 63; Exhibit #4 - LeClair Depo. p. 105; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. pp. 101-102; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. pp. 328, 337; Exhibit #27 - Morris

arrival at work but that they are not to clock out.[11] Non-exempt Assistant Managers are required to

clock in and out.[12] The Store Managers and Assistant Store Managers are also informed that they

were to record 50 hours per week, even if they worked in excess of that number, and an individual's

payroll records indicate 50 hours regardless of the number of hours actually worked.[13] This is true

for all stores throughout the country. (Exhibit #7 - Bailey Depo. pp. 103-104; Exhibit #20 - Silsby

Depo. p. 41). The standardized schedule produced by Staffworks also records 50 hours per week

regardless of the number of hours actually worked by the Store Manager and Assistant Store

Manager. (Exhibit #22). In addition, the standard schedule for management personnel prepared by

Corporate for each of its divisions require Store Managers and Assistant Store Managers to work in

excess of 40 hours a week and this schedule is common for all stores within each division.  (Exhibit

#22)  Each Rite Aid store has to stay within the store's payroll budget, and overtime pay for the

hourly associates is not allowed.[14] Rite Aid stores are open 7 days per week and because the store's

_____

declaration; Exhibit #28 - Morris Depo. pp. 32, 186, 225; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor Depo pp. 24-25, 101, 354, 399; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

[11]Exhibit #20 - Silsby Depo. pp. 61, 72-73; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. p. 229; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. p. 328; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. p. 225; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor Depo pp. 77-78; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

[12]Exhibit #5; Exhibit #20 - Silsby Depo. pp. 59-61.

[13]Exhibit #7 - Bailey Depo. pp. 103-104; Exhibit #20 - Silsby Depo. p. 41; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. pp. 101-102; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. p. 328; Exhibit #27 - Morris declaration; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

[14]Exhibit #10 - Panzer Depo. p. 180; Exhibit # 20 - Silsby Depo. p. 113; Exhibit #23 - Holt declaration; Exhibit #25 - Smith declaration; Exhibit #27 - Morris declaration; Exhibit #29 - Gawor

payroll budget is so low and because the hourly employees are allowed to work only so many hours, Store Managers and Assistant Store Managers are required to work approximately 50 to 80 hours per week and are required to perform non-managerial duties without being compensated for the overtime that they work.[15]

The duties and responsibilities for Rite Aid Key Supervisors, Assistant Managers, Managers and District Managers are the same throughout all divisions.[16]  Store Managers and Assistant Store Managers spend in excess of 50% of their time (in fact approximately 80%)  performing the same job duties as hourly employees, including Key Supervisors and Cashiers.[17] The job duties that Store Managers and Assistant Store Managers spend the majority of the time performing are running the cash register, customer service, stocking shelves, inventory, janitorial duties, unloading trucks and other non-managerial duties.[18]

Even though individuals hold the job title of Store Manager, they do not have the authority

---

declaration; Exhibit #31 - Hertzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration; Exhibit #34.

[15]Exhibit #20 - Silsby Depo. p. 63; Exhibit #23 - Holt declaration; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. p. 337; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. p. 225; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor Depo pp. 24-25; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

[16]Exhibit #10 - Panzer Depo., pp. 27, 62-63, 73-74, 93-94, 117, 120-121, 122-124, 163; Exhibit #35; Exhibits #13, 14, 15, 16; Exhibit #4 - LeClair Depo. p. 22.

[17]Exhibit #23 - Holt declaration; Exhibit #25 - Smith declaration; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. p. 202; Exhibit #29 - Gawor declaration; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

[18]Exhibit #10 - Panzer Depo. pp. 203-206; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. pp. 175-177; Exhibit #25 - Smith declaration; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. p. 202; Exhibit #31 - Hertzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

to hire or promote Key Supervisors or Assistant Managers; terminate Key Supervisors or Assistant Managers; set rates of pay for new employees; give pay raises; adjust and/or determine store hours (even the case of emergencies); negotiate and sign contracts; select, negotiate, and contract with vendors; determine the type of merchandise to be bought, stocked or sold; change the schematics of the store; change or adjust plan-o-grams and profit planners; perform physical inventories; change locks or passwords on doors, safe, and registers; establish or change price of merchandise; determine location of registers; determine the amount of cash left in the store overnight and amount of change fund to be maintained; establish, adjust or change payroll, inventory and sales budgets; authorize cash variances of any type; respond to media inquiries; determine the amount of merchandise ordered; adjust prices of merchandise; run advertisements and sales; add new vendors, programs, or items of merchandise; terminate an employee he/she believes is stealing; select or even contact vendors for store maintenance; determine the filing system, office organization and set-up; and terminate an employee without District Manager approval.[19] Store Managers also do not have the authority to change or adjust company policy, determine the amount for a cash pickup, accept payroll checks, and make merchandise donations.[20] In addition, all employees, including the non-exempt Cashiers and Key Supervisors, handle customer complaints, are responsible for shrink (including monitoring for shoplifting and internal theft), and training hourly employees through the buddy

---

[19]Exhibit #10 - Panzer Depo pp. 27-30; 32-36; 73-74; 78-79; 92-102; 104-113; 116-117; 120-122; 124-128; 134; 150-158; 162-164; 167-170; 183; 198; Exhibit #35; Exhibit #20 - Silsby Depo. pp. 95-97; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. pp. 61-64, 66, 148, 181-184,192, 193, 197, 209-210, 219, 220, 221; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. pp. 61, 89, 110-111, 114, 115, 126-127, 139-140, 142, 150, 221-222, 239, 260-262;  Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor depo pp. 29, 72, 81, 84, 118, 119, 171-173, 306; Exhibit #31 - Hertzog declaration; Exhibit #32 - Pittman declaration.

[20] Exhibit #10 - Panzer Depo. pp. 63, 76, 88-89, 165; Exhibit #35.

system (a system in which hourly employees train other hourly employees). (Exhibit #10 - Panzer Depo. pp. 197-198; 201).

A Store Manager is able to make the daily bank deposits, open the store, close the store, print daily/weekly reports, perform cash register audits (however, they have no discretion as to write ups for overages/shortages), accept returned merchandise, and counsel employees.[21] However, Assistant Managers and the hourly Key Supervisors also perform these same duties and such duties do not take up a majority of the Store Manager's time.[22] The only job duties which the Store Manager can perform that the Assistant Manager and hourly Key Supervisors cannot perform are interviewing and recommending for hire an entry level employee and terminating an employee.[23] However, Store Managers cannot terminate an employee without first discussing it with the District Manager and receiving approval.[24] As for hiring of entry level cashiers, Store Managers have the authority to

---

[21]Exhibit #10 - Panzer Depo. pp. 65; 66-68; 80-81; 85-86; 91-92; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. pp. 103-104; 180-81,190; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. pp. 107-108, 116, 160, 186, 276; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor depo pp. 216-218, 256, 281; Exhibit #31 - Hertzog declaration; Exhibit #32 - Pittman declaration.

[22]Exhibits #13, 14, 15; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. pp. 97, 122-123,178,180, 181, 189, 192, 195, 197; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. pp. 71, 168, 169, 171, 276; Exhibit #29 - Gawor declaration; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration.

[23]Exhibit #23 - Holt declaration; Exhibit #25 - Smith declaration; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration; Exhibit #4 - LeClair Depo. p. 88..

[24]Exhibit #10 - Panzer Depo. pp. 198, 150-158; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. p.66; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. p. 114; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration.

interview and recommend a candidate to the District Manager for approval.[25]   However, the Store

Manager is only allowed to interview candidates who first were approved by Corporate, regardless

of the candidate's experience or the Store Manager's desire to hire the candidate.[26]  In addition, Store

Manager interviews are limited to the specific questions authorized by Corporate.[27]  Store Managers

have no authority to set the rate of pay for a new hire or any other employee.[28]

Even though individuals hold the job title of Assistant Manager, they do not have the

authority to hire or promote any employees including entry level Cashiers, Key Supervisors, or

Assistant Managers; terminate any employee; set rates of pay for new employees; give pay raises;

perform employee evaluations; adjust and/or determine store hours (even the case of emergencies);

determine the hours each employee was to work; negotiate and sign contracts; select, negotiate, and

contract with vendors; determine the type of merchandise to be bought, stocked or sold; change the

schematics of the store; change or adjust plan-o-grams and profit planners; change locks or

passwords on the doors, safe, and registers; establish or change price of merchandise; determine

location of registers; determine the amount of cash left in the store overnight and amount of change

---

[25]Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. p. 67; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. p. 103; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor Depo. p. 83; Exhibit #31 - Hertzog declaration; Exhibit #32 - Pittman declaration.

[26]Exhibit #10 - Panzer Depo. pp. 171-180; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. p. 60; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. pp. 101, 200; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor Depo. pp. 82-83; Exhibit #31 - Hertzog declaration; Exhibit #32 - Pittman declaration.

[27]Exhibit #18; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. p. 59; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. p. 103; Exhibit #29 - Gawor declaration; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration.

[28]Exhibit #10 - Panzer Depo. p. 183-184; Exhibit #7 - Bailey Depo. pp. 77-78, 86, 89.

12

fund to be maintained; establish, adjust or change payroll, inventory and sales budgets; authorize cash variances of any type; respond to media inquiries; determine the amount of merchandise ordered; adjust prices of merchandise; run advertisements and sales; add new vendors, programs, or items of merchandise; terminate an employee he/she believes is stealing; select or even contact vendors for store maintenance; and determine the filing system, office organization and set-up.[29] Assistant Store Managers also do not have the authority to change or adjust company policy, determine the amount for a cash pickup, accept payroll checks, and make merchandise donations.[30] In addition, all employees, including the non-exempt Cashiers and Key Supervisors, handle customer complaints, make bank deposits, are responsible for shrink (including monitoring for shoplifting and internal theft) and training hourly employees through the buddy system (a system in which hourly employees train other hourly employees). (Panzer Depo. pp. 197-198; 201).

An Assistant Store Manager is able to make the daily bank deposits, open the store, close the store, print daily/weekly reports, run register audits, accept returned merchandise, and counsel employees.[31] However, the hourly Key Supervisors also perform these same duties and such duties do not take up the majority of the Assistant's time.[32] Plaintiffs' allege that there are not any job

---

[29]Exhibit #10 - Panzer Depo pp. 27-30, 32-36, 198, 120-122, 78-79, 182-183, 162, 99-102, 167-170, 104-111, 73-74, 116-117, 124-128,134, 144, 92-93, 95, 94-98, 100, 101-102, 111-113, 116-117, 150-158, 162-164; Exhibit #35; Exhibit #20 - Silsby Depo. pp. 95-97; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. pp. 44-52, 54, 55-57, 78, 79, 93, 101-102, 114-115, 163, 171-173, 346; Exhibit #33 - Walker declaration.

[30]Exhibit #10 - Panzer Depo. pp. 63, 76, 88-89, 165; Exhibit #35.

[31]Exhibit #10 - Panzer Depo. pp. 91-92, 65,85-86, 80-81; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. pp. 102, 103, 104, 108, 110, 278; Exhibit #33 - Walker declaration.

[32]Exhibit #13; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. pp. 100, 104, 133-134, 198-199, 207, 208; Exhibit #33 - Walker declaration

duties in which an Assistant Manager can perform that the hourly Key Supervisors cannot perform.[33]

Assistant Store Managers have no authority to terminate or hire any employee.[34]

Scheduling is performed by a corporate-wide program called Staffworks.[35] With Staffworks, either the Store Manager, Assistant Manager, or a hourly Key Supervisor input the times in which store employees are unavailable to work and Staffworks generates a schedule based on the payroll and sales budget of the store, as determined by Corporate.[36] Any manual changes made to the Staffworks' schedule had to be sent to the District Manager for review.[37] If a management employee[38] chooses to manually adjust the Staffworks' schedule, the adjustments are still controlled by the payroll and sales budget so that he/she does not have complete discretion to schedule

---

[33]Exhibit #27 - Morris declaration; Exhibit #33 - Walker declaration.

[34]Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. pp. 79, 101-102; Exhibit 33 - Walker declaration.

[35]Exhibit #20 - Silsby Depo. pp. 26-28; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. p. 98; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. p. 118; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. pp. 112-113; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor Depo p. 188; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

[36]Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. p. 98; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. pp. 118, 119, 122, 125-126; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. pp. 112-113, 125; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor Depo p. 189; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

[37]Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. p. 142-144; Exhibit #25 - Smith declaration; Exhibit #27 - Morris declaration; Exhibit #29 - Gawor declaration; Exhibit #31 - Hartzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

[38]Store Manager, Assistant Manager, or hourly Key Supervisor

14

employees based on the perceived need.[39]   Store Managers and Assistant Store Managers are informed that the number of manual adjustments to the schedule should be limited and are threatened with a reprimand if they do not comply.[40]

Rite Aid has been aware of the requirements of the FLSA and its implementing regulations and, despite that knowledge, it has refused to comply by paying its employees overtime pay when they perform overtime work. (Exhibit #4 - LeClair Depo. pp. 19-21, 23, 31, 37-38, 50, 51, 70, 96; Exhibit #17 - Markley Depo., pp. 43-44).  In addition to the *Albrecht* case in California that was resolved, with among other things, all Assistant Managers being re-classified as non-exempt and paid overtime for hours they work in excess of 40, LeClair testified he was aware of Department of Labor claims filed in New Jersey an Assistant Manager and Manager, Department of Labor claims in Oregon filed by an Assistant Manager, and an inquiry into the defendant with the FLSA in regard to Assistant Managers and Store Managers by the Department of Labor in Washington state. (Exhibit #4 - LeClair Depo. pp. 13, 110, 112, 113; Exhibit #5).  LeClair also testified that he was aware of an individual FLSA claim filed by an Assistant Manager in Virginia.  (Exhibit #4 - LeClair Depo., p. 4).  LeClair testified that the Department of Labor has also had discussions with Rite Aid

---

[39]Exhibit #10 - Panzer Depo. p. 180; Exhibit #34; Exhibit #7 - Bailey Depo. pp76-77; Exhibit #23 - Holt declaration; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. pp. 128, 251-253; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. p. 93; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor Depo., pp. 29, 306; Exhibit #31 - Hertzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

[40]Exhibit #17 - Markley Depo. pp. 38-40; Exhibit #23 - Holt declaration; Exhibit #24 - Holt Depo. pp. 142-144; Exhibit #25 - Smith declaration; Exhibit #26 - Smith Depo. pp. 121, 124-125; Exhibit #27 - Morris declaration; Exhibit #28 - Morris Depo. pp. 114-115; Exhibit #29 - Gawor declaration; Exhibit #30 - Gawor Depo., pp. 192-193; Exhibit #31 - Hertzog declaration; Exhibit #32 - Pittman declaration; Exhibit #33 - Walker declaration.

about the need to perform audits on the Assistant Manager job classifications. (*Id.* at p. 108). Despite its knowledge of the FLSA, its previous lawsuit in California and other states, and concerns expressed by the Department of Labor, Rite Aid has conducted no study to determine what tasks an Assistant Manager and Store Manager perform on a daily basis and continue to maintain that each of these job classifications should be exempt. (Exhibit #4 - LeClair Depo., pp. 70, 79-81, 96, 132-133; Exhibit #17 - Markley Depo., pp. 42-43).

## III.    ARGUMENT

### A.    THE DISTRICT COURT IS AUTHORIZED TO ISSUE NOTICE TO THE POTENTIAL OPT-INS

Section 216(b) of the FLSA provides, in pertinent part:

> Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. Section 216(b). "District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to Section 216(b)." *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 (M.D. Ala. 2002); *Horne, et. al., v. United Services Automobile Association*, 279 F.Supp.2nd 1231, 1233 (M.D. Ala. 2003); *See Hoffman-La Roche, Inc., v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Hipp v. Liberty National Life, Ins. Co*, 252 F.3d 1208, 1219 (11th Cir. 2001).

A district court has the authority to facilitate timely notice regarding FLSA collective litigation if it finds that there are other employees who may desire to opt-in and who are "similarly situated" with respect to the job requirements and pay provisions. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 419 (M.D.Ala. 1991); *Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 575 (M.D. Fla. 1996); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996); *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994); *White v. Osman*, 204 F.Supp.2d 1309, 1312 (M.D. Ala. 2002); *Horne v. United Services Automobile Assoc.*, 275 F.Supp.2nd 1231 (M.D. Ala. 2003).

The court's facilitation of notice to potential opt-in plaintiffs serves "the broad remedial purpose of the Act [FLSA]." *Dybach*, 942 F.2d at 1567, quoting *Braunstein v. Eastern Photographic Lab., Inc.*, 600 F.2d 335, 336 (2nd Cir. 1975), *cert. denied*, 441 U.S. 944 (1979); *see also Hoffman-LaRoche*, 493 U.S. at 170 ("[a] collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources"). Court facilitation of a Section 216(b) collective action also serves the equally important judicial interest of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Id.* Additionally, early participation by the district court protects against misleading communications by the parties, resolves any dispute among the parties regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, and expedites resolution of the dispute. *Garner*, 802 F. Supp. at 427; *see also* Local Rule 23.1(C)(4)(b)(communication should not misrepresent the status, purpose, and effects of the action). In the present case, early notice serves the critical function of advising potential opt-in plaintiffs of their right to participate in this action

17

by informing them of the requirement to file a consent to join as a party plaintiff pursuant to § 216(b) before the running of the applicable FLSA statute of limitations.

It is also abundantly clear that the notice motion is not a ruling on the merits of the plaintiffs' claims. *Grayson v. K Mart*, 79 F.3d at 1099 n.17; *Garner*, 802 F.Supp. at 423 n.3. *See also, Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)(plaintiffs need not demonstrate they will prevail on the merits to obtain class certification under the more demanding requirements of Fed.R.Civ.P. 23).

All plaintiffs need to demonstrate at this stage of a collective action is that "there are other employees of the . . . employer who [may] desire to 'opt-in'" and that these other employees are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1567-68; *Tucker*, 927 F. Supp. at 947; *White*, 204 F.Supp.2d at 1312-1313; *Horne*, 279 F.Supp.2d at 1234. Plaintiffs may establish this through "substantial" and "detailed allegations" in their complaint with some evidentiary support in the form of affidavits. *Grayson v. K Mart*, 79 F.3d at 1097. As demonstrated, plaintiffs more than meet this standard for creating an opt-in class and for issuance of notice under §216(b).

**B.     ISSUANCE OF NOTICE IS APPROPRIATE TO EFFECTUATE THE FLSA'S BROAD REMEDIAL PURPOSES AS PLAINTIFFS MEET THE "SIMILARLY SITUATED" STANDARD**

This Court has previously stated that "[t]he first and dispositive question is whether the original Plaintiffs and the potential opt-in plaintiffs are similarly situated." *Harper, et. al., v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 362 (M.D. Ala. 1999); *White*, 204 F.Supp.2d at 1313; *See Dybach*, 942 F.2d at 1567. "A plaintiff bears the burden of establishing that he and the class he wishes to represent are similarly situated." *Id. See Grayson*, 79 F.3d at 1096. "Ordinarily, this

18

burden is not heavy and may be met by detailed allegations supported by affidavits." *Id.*; *Grayson,* 79 F.3d at 1097.

For an opt-in collective action to be created under §216(b), an employee need only show that he/she is suing his/her employer for himself/herself and on behalf of other employees "similarly situated." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.), *cert. denied*, 519 U.S. 982, 117 S.Ct. 435 (1996). Plaintiffs' claims need not be identical to those of putative class members, but need only be similar. *Id.*; *Tucker*, 872 F.Supp. at 947. Plaintiffs need only demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons may exist. *Grayson v. K Mart*, 79 F.3d at 1097.

The standard plaintiffs must meet is thus considerably "less stringent" than the proof required pursuant to Fed.R.Civ.P. 20(a) for joinder or Fed.R.Civ.P. 23 for class certification. *Grayson v. K Mart*, 79 F.3d at 1096. *See also, Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir., 1995)(applying a "fairly lenient standard" for §216(b) determinations). A collective action does not, therefore, have to meet the particularized Rule 23(a) criteria of numerosity, commonality, typicality, and adequacy of representation.

This Court has previously stated that "a plaintiff must demonstrate that employees outside the work location for which the plaintiff has provided evidence were similarly affected by alleged work policies in order for the court to certify a collective action which extends beyond the plaintiff's own work location." *Harper v. Lovett's Buffet*, 185 F.R.D. 358, 363; *Horne, et. al. v. United Services Automobile Association*, 279 F.Supp.2d at 1235, p. 4. Here, the plaintiffs have established through the evidence submitted herewith that the defendant maintains common job requirements and pay provisions, common policies and procedures, common training and development guidelines,

common job descriptions, and common duties and responsibilities for all of its Assistant Store Managers and all of its Store Managers throughout the country. Thus, there is sufficient evidence, at this stage, for the Court to find that there are other Store Managers throughout the country who are similarly situated to Plaintiffs Holt, Smith, Gawor, Cooper, Hartzog and Pittman and that there are other Assistant Store Managers throughout the country who are similarly situated to Plaintiff Morris.

### 1.   Other Similarly Situated Rite Aid Employees May Desire To Opt-In

An undetermined number of current and former Rite Aid Store Managers and Assistant Store Managers are "similarly situated" to the named plaintiffs and may desire to opt into this collective action. Since this case was originally filed, four additional opt-ins have joined or requested to join the suit. Three of these individuals work in different states and districts than the original plaintiffs. There can be no question that there are thousands of Rite Aid employees who are similarly situated to either the Store Manager named plaintiffs and/or the Assistant Manager named plaintiff. As set forth earlier, Rite Aid operates approximately 3,400 stores nationwide in 28 states and the District of Columbia.[41]  (Exhibits #6, 7, and 9). Each of these stores employ a Store Manager and most of the stores employ an Assistant Manager.

In addition to the California state collective action which was litigated from 1999 to 2001 on behalf of Assistant Mangers, Store Managers, and Manager Trainees, there have been and are other cases filed throughout the country against Rite Aid for wage and hour violations. There have

---

[41]Even taking out the California stores from the equation, Rite Aid still operates in excess of 3,200 stores in 27 states and the District of Columbia. (Exhibit # 8).

been and are currently wage and hours claims filed on behalf of individual Assistant Managers in Virginia, Oregon, and New Jersey. Moreover, the Department of Labor requested that Rite Aid conduct audits of all of its Assistant Managers (except California) for purposes of ensuring compliance with the FLSA.[42]

Based on the four additional opt-ins that have joined or sought to join this suit, plus the number of complaints filed with the Department of Labor, the other claims which have been filed against defendant, and the similarity between all Store Managers throughout the country and the named plaintiffs and between all exempt Assistant Managers throughout the country and Plaintiff Morris, the Court should find that there are sufficient similarly situated employees who may desire to opt into this collective action, if given notice of such action.

### 2. Plaintiffs Have Carried Their Burden Of Demonstrating A Reasonable Basis For A Collective Action Determination

The plaintiffs have carried their burden of demonstrating the propriety of proceeding as a collective action. Typically, discovery is not necessary prior to a determination on the issue of §216(b) notice. *Mooney*, 54 F.3d at 1213-14. Rather, a collective action is to be authorized and notice issued when the plaintiffs have demonstrated a "reasonable basis" for the class allegations of the complaint by filing declarations and consents from class members. *Grayson v. K Mart*, 79 F.3d at 1097.

Plaintiffs' motion is more than adequately supported by the detailed allegations in the

---

[42]It should be noted that when performing these self-audits, the District Managers performed such audits by simply looking at the job descriptions and not interviewing or actually observing the tasks preformed on a daily basis by each Assistant Manager. (Exhibit #4 - LeClair Depo. pp. 70, 79-81, and 96; Exhibit #17 - Markley Depo. pp. 42-43).

Complaint, Amended Complaints, attached declarations, deposition excerpts, and exhibits. This evidentiary showing more than establishes "a reasonable basis" for proceeding as a collective action. Even where defendant offers contradictory evidence, the motion is not defeated so long as plaintiffs "successfully engage" the defendant's proof. *Grayson v. K Mart*, 79 F.3d at 1099 n.17. The plaintiffs have more than satisfied the quantum of proof typically required for issuance of notice. For example, in *Tucker*, 872 F. Supp. at 943, a collective action was authorized on the evidence provided by one named plaintiff and two subsequent opt-ins. In *Garner*, 802 F. Supp. at 422, the court required issuance of notice where plaintiffs identified 40 employees with prima facie claims of age discrimination.[43] Similarly, in *Belcher*, 927 F. Supp. at 252, the court found sufficient evidence in the twenty-four (24) affidavits filed by plaintiffs in support of their motion that the employer's "practices were not limited to a single store or region." In sum, the plaintiffs' proof is more than adequate to support a finding that there are "similarly situated" Rite Aid employees who should be apprized of the pendency of this action and given an opportunity to opt-in.

## C.   THE PROPOSED NOTICE IS FAIR AND ADEQUATE

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. The Court authorized notice prevents "misleading communications," such as is often unilaterally disseminated by defendants. *Id.* at 172; *Garner*, 802 F. Supp. at 422. Plaintiffs' proposed notice meets these criteria.

---

[43]Age discrimination claims brought under the Age Discrimination in Employment act (ADEA) are subject to the same opt-in mechanism as in the FLSA at Section 216(b). *Hoffman-LaRoche*, 493 U.S. at 168; *Grayson v. K Mart*, 79 F.3d at 1096.

Plaintiffs' proposal for court-approved notice (Exhibit #1) to the potential opt-ins is "timely, accurate, and informative" as required. *Hoffman-LaRoche*, 493 U.S. at 172. It provides notice of the pendency of the action and of the opportunity to opt-in. (Exhibit #1, §§1, 4)  The plaintiffs' legal claims are accurately described (*Id.* at §2) as is the composition of the class (*Id.* at §3). Potential opt-ins are advised that Rite Aid is defending against the claims (*Id.* at §2) and that they are not required to participate (*Id.* at §4).  The notice provides clear instructions on how to opt-in (*Id.* at §4 and 7); describes the legal effect of joining the suit (*Id.* at §5); describes the legal effect of not joining the suit (*Id.* at §6); notes that the Court expresses no opinion regarding the merits of plaintiffs' claims or Rite Aid's liability (*Id.* at §8); and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action (*Id.* at §9). *See also* FLSA, 29 U.S.C. § 215 (a)(3); *Reich v. Davis*, 50 F.3d 962 (11th Cir. 1995).

Plaintiffs have proposed that the notice and consent forms be mailed by first class mail to all Store Managers and Assistant Managers (with the exception of those employed in the State of California) employed in the last three years prior to the filing of the Complaint.  Those class members interested in participating would be required to file their consents with the Court within 90 days of the mailing.  This is consistent with established practice under the FLSA. *Hoffman-LaRoche*, 493 U.S. at 172; *Garner,* 802 F. Supp. at 422 (cut-off date expedites resolution of action); *Hipp*, 164 F.R.D. at 576 (M.D. Fla. 1996) (120-day filing period); *Belcher*, 927 F. Supp. at 252-55 (exemplar of company wide notice).

Therefore, the proposed notice (Exhibit #1) is fair and accurate and should be approved for distribution.

### D.     THE PROPOSED LIMITED DISCOVERY IS ESSENTIAL TO ENSURE TIMELY NOTICE

Discovery of a mailing list for Section 216(b) class members is a routine component of notice in collective actions. *Hoffman-LaRoche*, 493 U.S. at 170 ("District Court was correct to permit discovery of the names and addresses . . ."); *Grayson v. K Mart*, 79 F.3d at 1111 (ordering production of mailing list); *Belcher*, 927 F. Supp. at 252 (same); *Hipp*, 164 F.R.D. at 576 (same). Given that such data would doubtlessly be taken from a computerized database, it should be produced by Rite Aid in a computerized data file to facilitate the notice process.


### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiffs' motion to: (1) authorize this matter to proceed as a collective action; (2) authorize mailing of the proposed notice (Exhibit #1) to all Store Managers and Assistant Mangers (with the exception of those employed in California) employed by Rite Aid during the three years prior to the filing of the Complaint; and (3) require Rite Aid to produce a computer-readable data file containing the names, addresses, Social Security number and telephone numbers of all such potential opt-in plaintiffs so that notice may be implemented.

24

Respectfully submitted,

Rocco Calamusa, Jr.
Craig L. Lowell
Counsel for the Plaintiffs

OF COUNSEL:

WIGGINS, CHILDS, QUINN & PANTAZIS, P.C.
1400 SouthTrust Tower
Birmingham, Alabama 35203
205/328-0640

## CERTIFICATE OF SERVICE

I do hereby certify that I have mailed a copy of the above and foregoing, U.S. Mail, properly addressed and postage prepaid, on:

Nancy E. Rafuse
Daniel E. Turner
ASHE & RAFUSE, LLP
1355 Peachtree Street, NE
Suite 500
Atlanta, GA 30309-3232

David J. Middlebrooks
Jennifer L. Howard
LEHR, MIDDLEBROOKS, PRICE & VREELAND, PC
P.O. Box 11945
Birmingham, Alabama 35203

This the 12 day of March, 2004.

OF COUNSEL